# Moss *v.* Mosely.

*Action for Damages for Death of Employe.*

(Decided July 6th, 1906.   41 So. Rep. 1012.)

1. *Master and Servant; Duty of Servant; Complaint.*—The complaint averred explicitly the relation of master and servant, that intestate's death was caused by his conforming to an order negligently given by his superior to do certain dangerous work in cleaning up about certain machinery. Held, complaint is not defective for a failure to allege that plaintiff was in the discharge of his duties at the time he was killed.

2. *Same; Obvious Danger.*—Where the complaint alleged that the intestate, who was inexperienced, was killed while performing a dangerous service required by his superior servant, to whose orders he was bound to conform, it is not defective for a failure to allege that the danger was not obvious, or that the intestate was not fully warned or cautioned as to its existence.

3. *Same: Discharge of Duties.*—A complaint is not demurrable for failure to show that the plaintiff's intestate was in the discharge of his duties when killed, nor for indefiniteness of its allegation of negligence, where it alleges that defendant's intestate was engaged in operating certain brick works, in which plaintiff's intestate, a boy under fourteen years of age, and inexperienced, was employed at the time he was killed; that his death was proximately caused by the negligence of a person in defendant's service, to whom superintendence had been intrusted, and that, knowing that the place was necessarily dangerous, he directed intestate to clean up about certain machinery, so that and as the proximate result, plaintiff's intestate was killed.

4. *Pleading; Demurrer; Scope.*—A demurrer to a replication because it did not appear that plaintiff's claim was presented as required by law within twelve months after grant of letters on defendant's estate, raises no other question than the one, was the claim presented within the time required.

5. *Executors and Administrators; Claims; Presentation Against Estate.*—Where a defendant dies pending the suit and a reviver is had against the personal representative, plaintiff is not bound to present the claim on which the suit is based, to the administrator for allowance, or file the same in the probate court.

6. *Master and Servant; Death of Servant; Pleading; Issue and Proof.*—Where the complaint alleged that the superintendent knew that the plaintiff's intestate was an inexperienced boy in and about the business, the plaintiff was bound to prove this allegation, as it was a material averment, and not merely incidental, where the action was for the death of the servant caused by the negligence of the superintendent.

7. *Pleading; Issue and Proof; Immaterial Issue.*—Where a plea of defendant presented an immaterial issue, on which the plaintiff took issue, the burden was not on the plaintiff to deny the allegations of the plea, and where no evidence was offered either to support or controvert the plea, the defendant was not entitled to the affirmative charge.

8. *Master and Servant; Death of Servant; Evidence.*—As to whether the intestate was inexprienced with reference to the particular work assigned him, evidence that intestate was a boy between thirteen and fourteen years of age, his size, the character of work he was directed to do, the place where the work was, the fact that he had worked at defendant's brick yard only a short time, and that the work to which he was put at the time of his injury was not his regular job, but was dangerous work, was admissible.

9. *Same; Assumed Risk.*—A minor employe assumes only such risks of the business in which he is engaged as a person of his apparent age, intelligence and capacity would observe and appreciate by the exercise of ordinary care.

10. *Same; Care as to Minor Servant; Instruction.*—A charge which asserts that defendant was liable, if plaintiff's intestate was put to work at a task which was dangerous to a boy of intestate's experience, age and capacity, was erroneous.

11. *Same.*—Where the complaint averred that the work was necessarily dangerous, it was error to refuse a charge that unless the jury believe that the work when performed in the usual way was necessarily dangerous, plaintiff could not recover.

12. *Trial; Instructions; Refusal.*—A charge asserting that the evidence showed that the intestate was a bright boy for his age and had more mental capacity that the average boy of his age, asserts no proposition of law, and is a charge on the effect of evidence, and properly refused.

13. *Same.*—A charge asked merely for the purpose of answering an argument of opposing counsel is properly refused.

14. *Same; Elimination of Evidence.*—A charge asserting that if it was not a part of intestate's duty to clean up around the brick machine, which he was doing when killed, plaintiff could not recover, is properly refused, where there was evidence tending to show that defendant's superintendent, acting within the scope of his authority, ordered intestate to do the work he was doing at the time he was killed.

15. *Master and Servant; Death of Servant; Action; Instruction.*—A charge asserting that unless intestate was without experience in the work he was set to do when killed, plaintiff could not recover, should have been given; the complaint charging that intestate was inexperienced in this work.

16. *Trial; Argumentative Instruction.*—An instruction asserting that the law is that one who has by his negligence proximately contributed to his injury, cannot recover damages against another who has negligently caused his death, and that the rule is applicable though the person injured is under fourteen years of age, if he possesses sufficient mental capacity, is an argument, and its refusal proper.

17. *Master and Servant; Death of Servant; Action; Instruction.*—The plea alleged that there was a safe way to do the work intestate was set to do, and that his death was caused by his negligent failure to resort to that way. The charge asserted that if intestate had sufficient mental capacity to know and knew, or, by exercise of reasonable diligence, would have known that "the least dangerous way" to clean up the dirt

[Moss v. Mosely.]

was to use a shovel for that purpose, and if his failure to use a shovel proximately contribtued to his death, plaintiff could not recover. Held, the charge was not covered by the plea, in that it used the expression, "least dangerous way," and it was properly refused.

18. *Same; Contributory Negligence; Methods of Work; Question for Jury.*—One performing the duties of his employment is not guilty of negligence, as a matter of law, because he does not resort to the least dangerous way of performing them.

19. *Same; Instructions.*—A charge asserting that if plaintiff's intestate knew that to put his head between a certain moulder carrier and a post would probably cause his injury, but through inattention or carelessness, he put his head there, plaintiff could not recover, failing to hypothesize that intestate's act proximately contributed to his injury, was properly refused.

20. *Exceptions; Bill of; Signing; Time; Extension.*—Under the act amending the act establishing the city court of Birmingham, Section 19, the judge of such court has power in term time to extend the time for signing the bill of exceptions.

APPEAL from City Court of Birmingham.

Heard before HON. CHARLES A. SENN.

Action by W. L. Mosley, as administrator of the estate of George W. Mosley, deceased, against L. K. Moss. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

This was an action of damages for personal injury. The counts on which issue was joined were counts 1, 2, 3, 4, 5, and 11. Counts 3, 4, 5, and 11 were eliminated by charge of the court, leaving counts 1 and 2. Count 1 is set out in the opinion. Count 2, is as follows: Plaintiff, as the administrator of the estate of George Mosley, claims of the defendant the sum of $10,000 as damages, for that the defendant on, to-wit, the 22d day of August, 1902, was engaged in operating a brick works at or near De Soto, Ala., in Jefferson county, and that at said time and place, plaintiff's intestate, who was a boy of between 13 and 14 years of age, being under the age of 14, and inexperienced, was in the employ of said defendant in and about said works, and that while engaged at said time and place, plaintiff's intestate was killed. Plaintiff avers that said death was proximately caused by reason of the negligence of a person in the service and

employment of the defendant, who had at said time and place superintendence intrusted to him and while he was in the exercise of such superintendence, namely, one G. D. Etter, and consisted in this: that said Etter, knowing at said time and place that plaintiff's intestate was an inexperienced boy in and about said business, and that it was necessarily dangerous for him to work in and about the machinery or moving parts of said brick works, negligently instructed him to work in and about the machinery or moving parts of said brick works, and to perform dangerous service and negligently permitted or allowed the machinery of said brick works to be run or moved while the plaintiff's intestate was performing said dangerous service, namely, cleaning up about said machinery or moving parts of said works, which was dangerous for plaintiff's intestate to perform, so that, and as a proximate result thereof, plaintiff's intestate was killed as aforesaid to plaintiff's damages as aforesaid. Demurrers were interposed to this count as well as to count 1, but the questions raised thereby are sufficiently set out in the opinion.

The defendant filed special pleas 11, 12, 13, 14, 15, 16, and 17, on which issue was joined as well as the general issue. Plea 11. That the plaintiff's demand is barred by the 12 month statute of nonclaim, for that the same was not presented as a claim against the estate of defendant's intestate for more than 12 months after the grant of letters of administration thereon. (12) That the plaintiff's intestate was guilty of negligence which proximately contributed to his injury in that he had sufficient mental capacity to know, and knew or by the exercise of reasonable care could have known that to place his head in the position where it was when he was injured was dangerous, and would result in injury and that negligently placing his head there in said position resulted in said injury. (13) That plaintiff's intestate was guilty of negligence which proximately contributed to his injury in that he had sufficient mental capacity to know and knew or by the exercise of reasonable care and diligence would have known that to place himself in the position in which he was injured would probably result in his injury; that knowing that said ma-

chinery was moving he negligently put himself in said position thereby causing his injury. (14) That plaintiff's intestate was guilty of negligence which proximately contributed to his injury in that his injury was caused by his placing himself in close proximity to certain moving machinery when he had sufficient mental capacity to know and knew or, by the exercise of reasonable diligence would have known the probable consequences of his said act. (15) That the plaintiff's intestate was guilty of negligence which proximately contributed to his injury in that said injury was caused by plaintiff's intestate, without necessity therefor, negligently placing his head in such position near said machinery that he was injured thereby, such injury being the probable consequence of his act, and that he had sufficient mental capacity to know or, did know or by the exercise of reasonable diligence, would have known what the probable consequences of his said act would be. (16) That plaintiff's intestate was guilty of negligence which proximately contributed to his injury in that there was a safe way to do the work he was doing when injury occurred; that he had sufficient mental capacity to know and knew, or by the exercise of reasonable diligence, would have known of the danger of doing the work in any other way than the safe way to do the same, and that his injury was caused by his negligent failure to do the same the safe way. (17) That plaintiff's intestate was guilty of negligence which proximately contributed to his injury in that in doing said work he negligently failed to keep himself in such position as to avoid the moving parts of the machinery, and that he had sufficient mental capacity to avoid the same, and, by the exercise of reasonable care, could have avoided same, and that his injury resulted from his failure to avoid the same.

Special replications were filed to plea 11. Plaintiff says that he presented said claim against said estate within 12 months after the grant of letters of administration on the estate of said M. A. Moss, deceased, by filing said claim or statement thereof, verified by affidavit in the office of the judge of probate of Jefferson county, Ala., in which said letters were granted duly

verified by the oath of the claimant having knowledge of the correctness of the claim, and that the amount claimed was justly due after allowing proper credits. (4). Comes the plaintiff and for further replication to plea 11 of the defendant says that on, to-wit, the 2d day of June, 1903, he filed the following statement of said claim in the office of the judge of probate of Jefferson county, Ala., in which court letters of administration on the estate of said M. A. Moss were granted on the 19th day of November, 1902, which said statement and the indorsements thereon are as follows. (Here follows the claim.) And upon the filing of said claim the following docket entry was made upon the docket, kept for that purpose in said court. (Here follows the docket entry.) Plaintiff further avers that after the lapse of 12 months from the grant of letters of administration on said estate, but before the trial of said cause, said W. L. Mosley by leave of the probate court amended the affidavit filed as aforesaid on June 2, 1903, as a claim against the estate of said Moss, in the office of the judge of probate of Jefferson county by filing the following additional affidavit in the office of the said judge of probate in and for said county: State of Alabama, Jefferson county. Personally appeared before me, J. P. Stiles, judge of probate in and for said county and state, W. L. Mosley who being duly sworn, deposes and says that said claim against the estate of M. A. Moss, deceased, is for damages for the death of said George W. Mosley, who was killed while in the employ of said M. A. Moss, in and about the brick works belonging to or being operated by the said M. A. Moss, for the recovery of which damages a suit is now pending by W. L. Mosley as the administrator of the estate of George Mosley, deceased, in the city court of Birmingham, Ala., against the said M. A. Moss at the time of his death, and which is now pending in said court against L. K. Moss, as the administrator of the estate of M. A. Moss, deceased. Affiant further states that said claim for the sum of $10,000 is correct, and that the amount of the claim is justly due and after allowing all proper credits and that he, as the administrator of the estate of George Mosley, deceased, made diligent inquiry and examination, and that he be-

[Moss v. Mosely.]

lieves the amount of $10,000, claimed is justly due after
allowing all proper credits. Demurrers to these replica-
tions were filed. Those to two raising the question of ver-
ification. To the fourth replication the following:    (1)
Set out in opinion. (2) For that it does not appear that
said claim was duly verified as required by law. (3) For
that it appears that said amendment of said claim was
made after the expiration of 12 months· after the grant
of letters of administration on said estate.    (4)    For
that it does not appear that said amendment was made
with the permission or by leave of the judge of probate
in which the letters were granted or of ·the said probate
·court or after notice to the defendant.    (5)    For that the
statute does not apply to demands upon which action
is pending at the time of the death of the decedent, as to
allowing claims to be amended.    (6)    For that the stat-
ute providing for the presentation of claims against de-
cedent's estates by filing same in the probate court is
not applicable to actions revived against an administra-
tor.

    The facts as to the bill of exceptions sufficiently ap-
pear in the opinion.    The court refused to give the de-
fendant the general affirmative charge, and the following
written charges requested by him:    "(2)    Unless you be-
lieve from the evidence that the work of cleaning up
when performed in the usual way, whether by shovel or
otherwise, was necessarily dangerous, your verdict must
be for the defendant.    (3)    The undisputed evidence in
this case shows that George Mosley was a bright boy of
his age, and had more mental capacity than the average
boy of his age.    (5)    If you believe ·from the evidence
that the negligence which caused George Mosley's death
consisted in the operation of a defective or unsafe ma-
chine, your verdict must be for the defendant.    (6)    If
you believe from the evidence that George Mosley was
hired to lift the brick off the belt, and that it was not a
part of his duties as an employe of Moss to· clean up
around the brick machine, then your verdict must be for
the defendant.    (8)    Unless you believe from the evi-
dence that George Mosley was without experience in
the work he was doing when killed, your verdict must
be for the defendant. · (9)    The law is that one who has

by his negligence proximately contributed to his injury cannot recover damages against another who has negligently caused his death, and this rule is applicable even though the person injured is under 14 years of age, if the evidence shows that he has sufficient mental capacity. (10) If you believe from the evidence that George Mosley had sufficient mental capacity to know and knew or by the exercise of reasonable diligence would have known that the least dangerous way to clean up the dirt was to use a shovel for that purpose, and that he failed to use a shovel, and that his injury was proximately caused or contributed to by such failure, your verdict must be for the defendant. (11) If you believe from the evidence that George W. Mosley knew that the machinery was moving and knew what would be the probable result of placing himself in close proximity to the machine, and that his injuries resulted from his having placed himself in such proximity, your verdict must be for the defendant. (12) If you believe from the evidence that Geo. Mosley knew that to put his head between the moulder carrier and the post would probably cause his injury, but put his head there through inattention or carelessness, your verdict must be for the defendant."

GEORGE W. HUDDLESTON, for appellant.—No brief came to the reporter.

JOHN W. TOMLINSON and ROY McCULLOUGH, for appellee.—No brief came to the reporter.

DENSON, J.—This suit was commenced on the 12th day of September, 1902, by W. L. Mosley as the administrator of the estate of Geo. W. Mosley, deceased, against M. A. Moss. On the 30th day of December, 1902, on the suggestion by the plaintiff of the death of the defendant, since the commencement of the suit, leave was granted by the court to the plaintiff to revive the suit against defendant's personal representative, when made known. On the 25th day of March, 1903, the court made an order reviving the suit against L. K. Moss as the administrator of the estate of M. A. Moss, deceased.

The first count of the complaint, as last amended, was in this language: "Plaintiff, as administrator of the estate of Geo. W. Mosley claims of defendant the sum of ten thousand dollars damages, for that the defendant on, to-wit, the 22d day of August, 1902, was engaged in operating a brick works at or. near Desoto, Alabama, in Jefferson county, Alabama, and that at said time and place plaintiff's intestate, who was a boy of between 13 and 14 years of age, being under the age of 14, and inexperienced, was in the employment of said defendant in and about said works, and that while employed at said time and place plaintiff's intestate was killed; plaintiff avers that said death was proximately caused by reason of the negligence of a person in the employment or service of the defendant, to whose orders or directions the plaintiff's intestate at the time of said death was bound to conform and did conform, and that said death resulted from his having so conformed, namely, G. D. Etter, and consisted in this: that said Etter negligently instructed plaintiff's intestate to perform dangerous work, cleaning up in and about said machinery or movable parts of said brick works, when he knew that plaintiff's intestate was inexperienced and that said work was necessarily dangerous for him to perform. So that, as a proximate result thereof, plaintiff's intestate was killed, all to plaintiff's damage as aforesaid." Manifestly, this count was framed with respect to subdivision 3 of section 1749 of the code of 1896, "the employers' liability act." The demurrer of the defendant to the count was overruled, and the ruling of the court forms the basis of the first ground in the assignment of errors.

It is urged in the argument of counsel that the count was defective in not showing that plaintiff's intestate was killed while in the discharge of the duties of his employment. This criticism is hypercriticism, when the averments of the count are regarded. The relation of master and servant is explicitly averred. It also appears from the count that the intestate's death was caused by the intestate conforming to an order given to him by Etter, to perform work, cleaning up in and about said machinery or movable parts of said brick works, etc.,

and that Etter was a person in the employment of defendant to whose orders the intestate was bound to conform. It sufficiently appears that he was in the discharge of his duties, doing work for his master at the time he was killed. Next, it is urged against said count, that it is not shown by the count that the dangers of the work that plaintiff's intestate was set to do were latent or not obvious, nor that they were not known to the intestate, and that he was not fully warned and cautioned as to their existence. In support of this insistence, it has been argued that a servant is presumed to assume all obvious dangers and risks incident to the work which he undertakes to perform even though the work is extrahazardous. Leaving out of consideration the averments in the complaint that the plaintiff's intestate was less than 14 years of age; that he was inexperienced, and with the knowledge on the part of Etter that he was inexperienced, Etter set him to work, etc., we think the insistence and argument are unsound. It may be that the plaintiff's intestate could have been guilty of such contributory negligence as would have barred plaintiff's recovery, but it does not follow that he assumed the risk incident to the negligence of Etter, the person to whose orders he was bound to conform, and, as it averred, did conform. At least it was not necessary to the validity of the count that it should have been averred that the dangers of the work he was set to do were latent or that they were not obvious, or that he was not fully warned and cautioned as to their existence.—*Woodward Iron Co. v. Andrews*, 114 Ala. 243, on page 257, 21 South. 440, on page 443; *A. G. S. R. R. Co. v. Brooks*, 135 Ala. 401, bottom of page 406, 33 South. 181, on page 182; *K. C. M. & B. R. R. Co. v. Thornhill*, 141 Ala. 215, 37 South. 412; *Schroeder v. Chicago & Alton R. R. Co.*, (Mo. Sup.) 18 S. W. 1094, 18 L. R. A. 827; Reno Employers' Liability Acts, § 190. The demurrer to count 1 was properly overruled.

The second count was framed under subdivision 2 of section 1749 of the code of 1896. It is likewise urged against this count, that it does not show that the plaintiff's intestate was in the discharge of his duty when injured. We think the averments of the count afford suf-

ficient answer to the insistence. It is further insisted in the brief of counsel that the allegations of negligence in this count are too vague and indefinite. In this respect the count, tested by the many cases decided by this court, is sufficient.—*Bear Creek Mill Co. v. Parker,* 134 Ala. 293, 32 South. 700; *Armstrong v. Montgomery St. Ry. Co.,* 123 Ala. 233, 26 South. 349; *Birmingham S. R. R. Co. v. Cuzzart,* 133 Ala. 262, 31 South. 979; *S. Carr & Foundry Co. v. Bartlett,* 137 Ala. 235, 34 South. 20; *A. G. S. R. R. Co. v. Davis,* 119 Ala. 572, 24 South. 862; *M. & O. R. R. Co. v. George,* 94 Ala. 214, 10 South. 145; *Leach v. Bush,* 57 Ala. 145; *S. Ry. Co. v. Burgess,* 143 Ala. 364, 42 South. 35.

The defendant in answer to the complaint, among other pleas pleaded that the plaintiff's demand was barred by the statute of nonclaim. Notwithstanding, the suit was commenced against M. A. Moss and was revived against her personal representative within 12 months after her death, as is shown by the record, the plea was unchallenged by the plaintiff.—*Floyd v. Clayton,* 67 Ala. 265. The plaintiff joined issue on the plea and filed two special replications numbered 2 and 4. It appears that the presentation and verification, as averred, were in substantial compliance with the statute. Therefore, the demurrer to replication 2 was properly overruled.—Code 1896, § 133.

The first ground of demurrer to the fourth replication to plea 11 is in this language: "For that it does not appear therefrom that said claim was presented as required by law, within 12 months after the grant of letters of administration on said estate." The only objection particularized by this ground of demurrer goes to the time within which the presentation of the claim was made, and it is evident that the allegations of the replication answer this objection. The insistence of the appellant, however (necessarily based on this ground of the demurrer), is that the nature and amount of the claim are not sufficiently shown by the presentation as alleged in the replication. If it be conceded that the replication is defective in this respect, the demurrer does not present it, and the court could only look to the grounds of the demurrer as they were assigned in making its rulings. The statute expressly provides that

"Any defect or insufficiency in the affidavit may be supplied by amendment, at any time."—Code 1896, § 133. The affidavit as shown by the amendment set out in the replication was in substantial compliance with the statute, and it appears by the averments of the replication to have been made by leave of the judge of probate. Hence, the second, third, and fourth ground of the demurrer to the replication were without merit. With respect of amendment, there is nothing in the statute, section 133 of the code of 1896, which excludes demands on which suit is pending, therefore, the fifth and sixth grounds of the demurrer to the replication were not well assigned. All other matters sought to be presented for review are contained in the bill of exceptions, and this brings us to a consideration of the motion made by the appellee to strike the bill from the record.

Section 19 of the act to establish the city court of Birmingham, acts 1888-89, p. 1000, is in this language: "That all bills of exceptions relating to the trial of causes in said court must be signed by the presiding judge of said court within sixty days after the day on which the issue or issues of fact to which said bill of exceptions relates was tried, unless the time for signing such bill of exceptions is extended by agreement of parties or by order of the presiding judge, as now authorized by law respecting the signing of bills of exceptions in the circuit court."

The cause was tried on the 16th day of April, 1904. The bill of exceptions was signed on the 14th day of October, 1904.

The record shows that on the 4th day of June, 1904, there was filed with the clerk as one of the papers in the cause a paper writing in words and figures to-wit:

"In the City Court of Birmingham. W. L. Mosley, Admr. v. L. K. Moss, Admr. For sufficient reasons appearing to the court it is ordered that the time for the presentation and signing of a bill of exceptions in above cause be and the same is hereby extended until October 15th, 1904. Chas. A. Senn, Judge.

"We consent that the above order shall be made. John W. Tomlinson, Atty. for Pltf. George Huddleston, Atty. for Def.

[Moss v. Mosely.]

"Filed in office this 4th day of June, A. D., 1904. John S. Gillespy, Clerk & Register."

No entry of the contents of the paper was made in the minutes of the court. The city court of Birmingham meets on the first Monday in October, and continues in session until the 1st day of July following, so the paper was filed in term time. Bills of exceptions are creations of statute law. Hence, the validity of the paper purporting to be a bill of exceptions, when assailed, must be determined by the interpretation of the statute or satutes through which its right of recognition is claimed —its validity is asserted. The general law on the subject is contained in chapter 13 of the code of 1896, §§ 612-622. By the very letter of section 19 of the "practice act" a bill of exceptions in a case tried in the city court of Birmingham may be legally signed by the presiding judge at any time within 60 days after the day on which the issue or issues of fact to which the bill relates were tried. It must be observed that no power of extending the time within which the bill may be signed is conferred upon the court by the act, and in this respect it may be said that the act qualified the general law (section 617 of the code of 1896) so far as it is applicable to the city court. In other words, the authority to sign the bill within 60 days after the trial, would seem to have been given in lieu of the power of the court to make the extension given by section 617 of the code of 1896. The act provides, however, that the time for signing may be extended by agreement of parties or by order of the presiding judge, "*as now authorized by law respecting the signing of bills of exceptions in the circuit court.*" Italics ours.

No argument is necessary to show that the authority or right of the parties by agreement, and of the presiding judge by order to extend the time for the signing of the bill of exceptions as referred to the act, must be ascertained from and controlled by the statute and rules of practice applicable to the circuit court. We must look to them to determine the right of extension and the validity of such extension. Referring then to the statute it seems, that a distinction is there made between the court and the judge with respect of such extension. See

the reasoning of Judge Tyson on this subject in *Scott's Case*, 141 Ala. 39, 37 South. 366. See, also, *Wright's Case'* 136 Ala. 50, 34 South. 187. Section 617 of the code of 1896, confers upon the court in term time the authority to fix a time within which a bill of exceptions may be signed, and provides that the judge in vacation may extend the time. Section 618 of the code of 1896, provides, that, "The parties or their counsel, may by agreement in writing entered into in term time, fix a time in which the bill of exceptions may be signed, and may, in like manner extend such time."

Section 619 provides that "The time fixed by the court or judge may be extended by agreement of the parties or their counsel, and the time fixed by agreement may be extended by the judge in vacation." It is obvious from the preceding sections that the time fixed by the judge as referred to in section 619 means the time of extension fixed by the judge in vacation, for neither of the sections confers upon the judge authority in term time to fix any time of extension, the authority, in term time, being expressly conferred on the court while express authority is given in the same section to the judge to be exercised in vacation, to extend the time fixed by the court. Under the code, then the time fixed by the court or by agreement of the parties in term time may be extended by agreement of the parties or by the judge in vacation. And if the parties in vacation extend the time previously given by the court or the parties, this time may be further extended by the judge in vacation, likewise an extension made by the judge in vacation may be extended by the agreement of the parties or furthr extension may be given by the judge.

Thus it seems to follow that under the law applicable to bills of exceptions in the circuit court the presiding judge as such has no power in term time to extend the time for signing a bill of exceptions, but the only authority he has is to be exercised in vacation with respect of extending the time already fixed either by the court, by agreement of parties or by himself as judge in vacation. It is clear under the practice act referred to that the time fixed by it for signing bills of exception may in term time be extended by agreement in writing of

[Moss v. Mosely.]

the parties and the time fixed by such agreement, under the act, construed in connection with the general statutes, may be extended by agreement in writing by the parties, or the time fixed by order of the presiding judge made in vacation. And it is my view that the order of the presiding judge referred to in section 19 of the practice act does not relate to any order to be made in term time, but to orders which may be properly made under the general statutes by the presiding judge in vacation, extending the time of signing bills of exceptions. Further, that under said section, the court has no power to grant an extension of the time within which a bill of exceptions may be signed. It must be signed within the time specified in the statute or within the time fixed by agreement of the parties. The time fixed by the agreement of the parties as has been stated may be extended either by agreement of the parties, or by the presiding judg in vacation, likewise the time of extension so made by the presiding judge may be extended by the agreement of the parties and the time of signing the bill if covered by either of the categories will be valid.

Counsel for the appellant insists that the paper filed purporting to extend the time for signing the bill of exceptions for all practical purposes may be construed as an agreement of counsel within the meaning of section 618 of the code of 1896. If this contention of counsel could be sustained and the paper held to be an agreement of the parties to extend the time for signing the bill, it would not avail the appellant anything, for the reason, that the bill of exceptions was signed after the next succeeding term of the court to the one at which the trial was had, was begun. Therefore, signed in violation of rule 30 of practice pertaining to circuit and inferior courts.—*Cooley v. U. S. Savings & Loan Association,* 132 Ala. 590, 31 South. 521; *B'ham Ry. & Electric Co. v. James,* 138 Ala. 594, 36 South. 464; *Abercrombie & Williams v. Vandiver,* 140 Ala. 288, 37 South. 296. The foregoing views with respect to the motion to strike the bill of exceptions are those of the writer. The other members of the court are of the opinion, and it must be accordingly held, that the bill of exceptions is valid, and that the motion to strike is without merit.

[Moss v. Mosely.]

The remaining assignments of error relate to exceptions reserved to portions of the oral charge of the court and charges refused to the defendant. Issues were made up with respect to counts 1, 2, 4, 5, and 11 of the complaint, to which were filed the plea of the general issue and special pleas 11, 12, 13, 14, 15, 16, and 17, on which issue was joined. Issue was also joined on special replications 2 and 4 filed to plea 11. This plea presented the statute of nonclaim as a defense. And the special replications 2 and 4 allege a presentation of the claim by filing a statement of the claim in the office of the judge of probate. Counts 4, 5, and 11 were charged out as the request of the defendant.

It is insisted that the general affirmative charge requested by the defendant should have been given. This insistence is rested upon two grounds, first, it is contended that there is no evidence that tends to show that Etter, the superintendent of the brick works, knew that plaintiff's intestate was inexperienced. It is distinctly averred in the first and second counts of the complaint that Etter, the superintendent, "knew that plaintiff's intestate was an inexperienced boy in and about said business." This it not an incidental averment, but is made material by the pleader, therefore should be proved to the reasonable satisfaction of the jury. But it is not necessary that the facts should be proved by direct or positive evidence, but like every other material allegation it may be proved by circumstantial evidence. And unless in all the evidence there is absence of room for an inference to be drawn of the existence of the fact averred it cannot be taken away from the jury, but must be submitted under appropriate instructions for their determination.—*Ala. Steel & Wire Co. v. Wrenn,* 136 Ala., bottom of page 493, 34 South. 970; *Culver v. Ala. Midland R. R. Co.,* 108 Ala. 335, 18 South. 827. Upon due consideration of the evidence in this respect we are of the opinion the affirmative charge was properly refused.

Next, it is insisted that plea 11 put in issue the statute of nonclaim, that the proof was insufficient to show a presentation of the claim and that, therefore, the affirmative charge should have been given. We think it

[Moss v. Mosely.]

·cannot be gainsaid, when a defendant in a suit dies pen-
dente lite, and the suit is revived against the deceased's
personal representative, it ·is not required that the
claim upon which the suit is based should be presented
to . the administrator or filed in the probate court.    In
other words, the statute of nonclaim is inapplicable to
such claims.—*Floyd v. Clayton*, 67 Ala. 265.    This be-
ing true, plea 11 presented a wholly immaterial issue.
Nevertheless, it was recognized by the plaintiff and if
the plea was proved the defendant was entitled to the
charge notwithstanding the immateriality of the plea.
But the appellant (defendant) says and contends, that
when the plea of nonclaim is filed the burden of proof is
on the plaintiff to prove presentation of the claim.    And
in cases where the plea presents a material issue it can-
not be doubted such is the law.—*Mitchell v. Lea*, 57
Ala. 46.    We think this rule with reference to the bur-
den of proof is not applicable in cases where the issue
presented is an immaterial one, and that to entitle de-
fendant to the affirmative charge on that line of decis-
ions which hold that proof of a plea presenting an imma-
terial issue entitles a defendant to the affirmative
charge, the evidence in the case should show without
conflict the truth of the facts averred in the plea.    So,
if there is no evidence tending to support plea 11 or to
controvert its allegations, the defendant was not entitled
to the affirmative charge on this insistence.

The proof tended to show plaintiff's intestate was a
boy between 13 and 14 years old; it tended to show his
size and the character of the work he was put to do and
place where the work was.    It also tended to show that
he had worked at the brickyard only a short time and
that the work to which he was put by the superintendent
and which he was doing when he received his injuries
was not his "regular job," and that it was dangerous
work.    We think all these matters were matters which
the jury might properly consider in determining wheth-
er or not the boy was inexperienced with respect to the
particular work assigned him.    And while the oral
charge of the court with respect of these matters may
be argumentative in form, yet, the exception reserved to
it cannot avail to reverse the·case.    The court further

charged the jury that "There is another averment which plaintiff must prove; and that is, that this work was necessarily dangerous, which means that it would be necessarily dangerous in spite of proper warning and instruction. If you are reasonably satisfied from all this evidence, that this work which the boy was put to do was necessarily dangerous in that sense; that is, that it was dangerous to a boy of the experience, age and capacity that this boy was, that it was necessarily dangerous, however prudent and careful the instructions and warnings had been given, then the master had no right to put him at that kind of work and would be liable in case of his death." "The law recognizes the right of a master to employ an infant in a hazardous occupation on condition that he shall furnish such infant with such information relative to the perils of his situation as will enable him to comprehend the dangers and understand how to avoid them. But it is an actionable wrong for a master to expose in a hazardous employment one whom he knows to be lacking in capacity to understand and appreciate the dangers surrounding him, however much he may have been instructed. An contrary rule of law would be egregiously inhuman."

But, "a minor, like an adult, assumes the obvious risk of injury from the condition of the business in which he engages, and those are obvious risks which a person of plaintiff's intestate's apparent age, intelligence, and capacity would discover and appreciate by the exercise of ordinary care."—Dresser's Employers' Liability, § 96. Again, Mr. Dresser says: "By accepting the employment, a minor, equally with an adult, assumes the risk of injury, not only from the negligence of fellow servants and dangers incidental to the business, but also from the existing condition of affairs which he is competent to appreciate, and the danger of which he may avoid."—Dresser's Employers' Liability, § 96; *Ala. Mineral R. Co. v. Marcus,* 115 Ala. 389, 22 South. 135.

The evidence in the case showed that the plaintiff's intestate was a bright, smart boy, of good intelligence, well grown for one of his age. There is also evidence tending to show that the superintendent, Etter, instructed and warned the boy of the dangers connected with the

work; and there is also evidence in the record which tends to show that the danger was open and obvious. It was also shown that Etter called the boy's attention specially to the particular danger of being caught between the belt and the post—the place where he was caught and killed. To say that putting a boy to work that is dangerous renders the master absolutely liable for the boy's injury would be to deprive boys though smart, intelligent, and capable of appreciating the danger and of avoiding it, of the privilege of being employed in any dangerous work, for if this is the law no prudent master would give a minor employment about moving machinery which we judicially know is dangerous. It would also destroy in large measure the doctrine of assumption of risk which is so firmly engrafted in the law of master and servant as declared in our decisions. "Warnings to a servant take nothing from the inherent danger of the work; they merely enable him to avoid it." The charge is not stated as an abstract proposition, but as being applicable to the facts of the case. In the light of the evidence and the propositions of law above adverted to, we must hold that the court committed reversible error in that portion of the oral charge under consideration.

Charge 2, refused to the defendant, should have been given. The complaint in both counts avers that the work was necessarily dangerous. It is a material averment, and without proof of it to the reasonable satisfaction of the jury the plaintiff should not recover.

Charge 3 was properly refused. It asserts no proposition of law. Charge 4 is not assigned as error.

Charge 5 was properly refused. The bill of exceptions shows that it was requested merely for the purpose of answering an argument of opposing counsel.—*Mitchell's Case,* 129 Ala. 25, 30 South. 348. Moreover, given charge 17 seems to cover it.

Charge 6 was properly refused. It ignores the insistence of plaintiff and the evidence tending to support it, that superintendent Etter, ordered the boy to do the work he was doing at the time he was killed.

Charge 7 is not assigned as error.

[Moss v. Mosely.]

Charge 8 should have been given, one of the material averments of the complaint is that the boy, George W. Mosley, was inexperienced in the work he was set to do.

Charge 9, besides possessing other vices, is argumentative, and was properly refused.

Charge 10 was properly refused. By plea 16 the defense is made that there was a safe way to do the work the boy was set to do, and that his injury was caused by his negligent failure to resort to that way. But the plea does not aver that there was a "least dangerous way," nor can it be said under all circumstances, that a servant who does not resort to the "least dangerous" way is guilty of negligence.

Charge 11, construed in connection with special plea 14, and in the light of the evidence, should have been given.

Charge 12 failed to hypothesize that the act of Mosley, set forth in the charge, proximately contributed to his injury.

For the errors pointed out the judgment is reversed, and the cause remanded.

Reversed and remanded.


WEAKLEY, C. J. (On Rehearing.)—The question to be considered is whether the bill of exceptions was signed at a time authorized by law.

By the act approved February 28, 1889, (Acts 1888-89, p. 992) amending a previous act, establishing the city court of Birmingham, it was provided that the court should hold one regular term in each year, commencing on the first Monday in September, and ending the last day of the succeeding June, thus constituting a term of 10 consecutive months. At the time of the passage of the amendatory act, the law regulating the signing of bills of exceptions in cases tried in circuit courts or in other courts of like jurisdiction, unless otherwise specially provided and authorizing the extension of the time for signing such bills, was found in section 2761 of the code of 1886, in the act of February 22, 1887, entitled, "An act to regulate the signing and allowance of bills of exceptions" (Pamph. Acts 1886-87, p. 126) and in rule 30 of circuit court practice (Code 1886, p. 810).

[Moss v. Mosely.]

By section 2761 it was provided that "no bill of exceptions can be signed after the adjournment of the court during which the exception was taken, unless by consent or agreement of counsel in writing, except in such cases as is otherwise provided;" and the effect of this section was that a party desiring to take a bill of exceptions, must have secured its signature by the presiding judge at the trial term, unless the opposite party or his counsel were indulgent enough to consent to an extension of time. Rule 30 of circuit court practice recognizes this situation by affirming "that in all circuit and inferior courts of common-law jurisdiction bills of exceptions may be signed by the presiding judge at any time during the term at which the trial or proceeding is had, or by written consent of the parties, or their counsel filed in the cause," but stipulating further that by the consent of the adversary party or his counsel the bill might be signed at any time before the next succeeding term, and not afterwards; rule 30 by its concluding clause placing a limit as to time beyond which consent of parties could not authorize the signing of a bill of exceptions. In this state of the law, the legislature again dealt with the subject because it was often inconvenient and burdensome to require a bill of exceptions to be prepared and signed during the trial term, and it did not seem just to withhold from the court or the presiding judge all power in its or his discretion to extend the time, whereby the excepting party would be placed at the mercy of his adversary in respect of securing an extension. To remedy this defect in the law, the act approved February 22, 1887 (Pamph. Acts 1886-87, p. 126), was passed, by the first section of which it was provided "that in all cases where bills of exceptions are authorized, the court in term time may, on the application of either party, fix the time in which the bill of exceptions shall be signed, and the judge in vacation may for good cause extend the time fixed in term time; provided, in no case shall the time allowed exceed six months; and provided further that nothing herein contained shall prevent parties from agreeing as to time as now provided by law."

After the enactment of the last mentioned statute the law stood thus: A bill of exceptions might be signed at any time during the trial term; the court in term time might fix the time in which the bill might thereafter be signed, and the judge in vacation might extend the time fixed by the court during the trial term; but in no case could the time allowed exceed six months, whether extended by the court, judge, or by agreement of parties. The right of parties to agree to an extension was not impaired or destroyed by the act of February, 1887, and such right remained, but it was subject to the provision of rule 30 which denied to the parties the right to extend the time for signing a bill into the succeeding term. It was also the settled construction that an extension of time in any proper form or by any authority must be made before the time for signing the bill had expired under existing conditions; in other words, that no lapse or chasm must intervene or occur. There are other provisions on the subject in the code of 1896 (sections 618, 619), not contained in the act of February 22, 1887, and which were not in existence when the practice act of the Birmingham city court became a law on February 28, 1889, and hence cannot be considered in construing the latter act in so far as it undertakes to regulate the signing of bills of exceptions in cases tried in said city court.

We have been at some pains to set out with particularity of detail the state of the law on the subject of the signing of bills of exceptions in the circuit court, at the time of the passage of the Birmingham city court practice act, because it becomes necessary to consider the then existing law in ascertaining what was meant by the last clause of section 19, which declared that all bills of exceptions relating to the trial of causes in said court must be signed within 60 days after the day on which the issue or issues of fact to which said bill of exceptions relates was tried, unless the time for signing such bill of execptions is extended by agreement of parties or by order of the presiding judge, as now authorized by law respecting the signing of bills of exceptions in the circuit court." In analysing this section, it must be remembered at the outset that it relates to a court

[Moss v. Mosely.]

having a continuous term of ten months. Obviously, it would not have been wise to allow parties, the whole of so long a term within which to have a bill of exceptions signed; the law giving parties the term within which to secure an authenticated bill was framed to apply to courts having comparatively short terms; and so section 19 fixed 60 days as the time that was proper in any event to be allowed, and that without grace or favor from the court, the judge or adversary parties or their counsel, at the same time compelling action within that period unless further indulgence could be obtained in some authorized manner. It is a matter of common knowledge among judges and practitioners that circuit courts in term time were accustomed, as a matter of course, under the act of February 22, 1887, to fix some reasonable time beyond the term as for example of 30 or 60 days for the signing of bills, and so it was that the legislature dealing with the city court of Birmingham and with its exceptionally long term, not only fixed a limit of 60 days so as to preclude the idea that parties at all events would have the whole term for obtaining a bill of exceptions, but also secured to the parties that reasonable time as circuit courts in term time had been accustomed to do on application. Having done this, the legislature proceeded to deal with the subject of extension of time, and by section 19 also authorized such extension "by agreement of parties or by order of the presiding judge." Did the legislature by the clause "as now authorized by law respecting the signing of bills of exceptions in the circuit court" intend to withhold from a presiding judge the power, in term time, to make an extension of time for signing a bill, and to permit him only in vacation to exercise the power of extension which section 19 undoubtedly confers upon him? We do not think it at all probable that the framers of the practice act meant the statute to so operate. No good reason can be perceived why the presiding judge should have the power of extension during two months of vacation, and not have it during the 10 months of the term. Why should the legislature place a party at the mercy of his adversary during 10 months, and rescue him from an unwilling or ungracious opponent during a short va-

[Moss v. Mosely.]

cation? The policy of the law in force at the time of the passage of the Birmingham city court act was to relieve parties in respect of extensions of time for signing bills of exceptions from any dependence upon their adversaries.—*Ladd v. State,* 92 Ala. 58, 9 South. 401. The statute under consideration ought not to receive a narrow construction, operating to produce consequences which in all human probability the framers of the statute neither foresaw nor intended.

Furthermore, the argument that by the reference in section 19 to the then existing law respecting the signing of bills of exceptions in the circuit court, it was intended to confine the exercise of the power of extension, expressly conferred on the presiding judge, to vacation proves too much, and is destructive of itself. By the general law, as we have already shown, the judge in vacation might extend the time that was fixed by the court during the term, but by the city court act no power at all is conferred on the court to fix or extend the time during the term, and hence under the construction contended for, the presiding judge could never make an extension, although section 19 provides that he may do so. Nor can section 619 of the code of 1896 be called to the aid of the argument we are combatting, since that section was not in existence at the passage of the city court act." 'The artificial manner in which many of our statutes are framed, the inaptness of expressions frequently used and the want of perspicuity and precision not infrequently met with, often requires the court to look less at the letter or words of the statute than at the context, the subject-matter, the consequence and effects, and the reason and spirit of the law, in endeavoring to arrive at the will of the law giver.—*Thompson v. State,* 20 Ala. 54.

It is a well-settled rule that "when words are not precise and clear, such construction will be adopted as shall appear the most reasonable and best suited to accomplish the object of the statute, and a construction which would lead to an absurdity ought to be rejected."—*Sprowl v. Lawrence,* 33 Ala. 674. What then was intended by the concluding clause of section 19, and what field of operation may be found for it without eliminating from the section the power conferred on the presid-

[Moss v. Mosely.]

ing judge to extend the time for signing a bill of exceptions? The section did not purport to be a complete enactment on the subject with which it dealt. It did expressly confer upon the presiding judge and the parties by agreement the power of extension, but there were other regulations in the general law not specified in section 19, with which it was desired to supplement the express provisions of the section. These were, that the agreement of the parties. must be in writing; that parties could not extend the time into the succeeding term, and that the time in no event could be extended beyond six months, and that no chasm must occur. It was not the purpose to limit the power of the presiding judge as to the time when he might make an order of extension; that is, as between the exercise of it in term time or in vacation; and we do no violence to the language of the section in so holding. The section was remedial and should be construed liberally to effectuate its evident purpose. By the terms of the city court act the presiding judge had the power in term time to extend the time for signing the bill in this case and he exercised the power by signing the order found in the record. It is true that the order recites that sufficient reasons appeared to the court, yet the order of extension was signed by the presiding judge and it is evident he made the order. It would be extremely technical to hold the order was that of the court only, and not of the judge. In fact the difference between them in respect of an order of extension of time for signing a bill of exceptions is very insubstantial, and is material only because the law in certain cases establishes the difference. We have no difficulty in holding that the order of extension was made by the presiding judge, although it might be treated as having likewise been made by the court. Those taking the order seem to have been careful to have the judge give it a dual form.

The bill of exceptions was signed in time, and cannot be stricken. The result is that a rehearing must be granted, and the exceptions presented by the bill considered.

All the Justices concur in this opinion except DENSON, J., who states his views in his opinion upon the whole case.