[Pickering *et al.* v. Townsend & Brown.]

# Pickering et al. v. Townsend & Brown.

118  351
121  603

*Bill in Equity by Judgment Creditor of Corporation to enforce Individual Liability of Stockholders, and for the Appointment of a Receiver.*

1. *Insolvent corporation; payment of subscription for stock; equity of bill filed by judgment creditor of corporation.*— Where a subscription for stock in a corporation is paid for by the transfer of property at a grossly fictitious valuation, upon the corporation becoming insolvent, a judgment creditor thereof, having exhausted legal remedies, can maintain a bill in equity to compel the stockholders to pay, for the satisfaction of corporate debts, the difference between the par value of the stock and the reasonable value of the property transferred in payment of their subscription to said stock.

2. *Chancery practice; docket memorandum not a decree and will not be reviewed.*—A memorandum entered on a court docket is not the equivalent of a decree, and will not support an assignment of errors; and, therefore, the rulings of a chancellor will not be reviewed when the only record of them is the docket memorandum made by the chancellor, which is transcribed in the record on appeal.

3. *Same; after decree pro confesso answer cannot be filed without setting aside decree.*—Where a decree *pro confesso* has been rendered against a defendant in a chancery court, no answer for such defendant can be properly filed, without first having such decree *pro confesso* set aside.

4. *Corporations; priority of claims of employes over lien of mortgage securing bonds; what necessary to establish such priority.*—Where the employes of a corporation seek in a court of equity to have their claims for services, performed within six months next preceeding the appointment of a receiver, preferred and declared superior to the lien of a mortgage securing the bonds issued by said corporation, and it does not appear from any testimony offered that there was a diversion of the gross earnings of the corporation from the employes to the bondholders, or that the services were rendered in the betterment and permanent improvement of the mortgaged property, enuring to the benefit of the bondholders, or that the labor of the claimants was necessary to continue the business of the corporation, in order to keep it a going concern, or if so, that such continuance was to the advantage of the bondholders, or that any income out of

which wages of such labor should be paid had been realized by the receiver in the administration and operation of the business of the corporation, the evidence is not sufficient to establish the priority of the claims as prayed for.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. THOMAS M. ARRINGTON.

The facts of the case pertaining to the rulings of the chancery court, which are reviewed on the present appeal, and which are necessary to an understanding of the decision of this court, are sufficiently stated in the opinion.

W. S. THORINGTON and J. M. CHILTON, for appellant Pickering.—The bill is without equity. It first alleges facts which, if proved, would constitute a fraudulent over-valuation of the property conveyed in payment of stock by the original subscribers, and seeks to hold the subscribers still liable. And yet prays a sale of the very property which was by these subscribers conveyed as in full payment for the stock. This, we submit, can not be done. If there has been a fraudulent over-valuation, the corporate creditor may repudiate it, and treat the liability for the subscription as still subsisting. But if the conveyance by the subscribers was accepted in full payment of the subscriptions, the creditor can not subject the property, and ignore the terms upon which the subscriber conveyed and the corporation accepted the conveyance. He must affirm or disaffirm in whole. He can not treat the conveyance as made in fraud of creditors, and yet reap the fruits of it.—*Cooper v. Berney Nat. Bank,* 99 Ala. 119; *Sullivan v. McLaughlin,* 99 Ala. 60. It is settled that before a resort can be had to unpaid subscriptions, all remedies at law must be exhausted. In order to show this, a return of "no property found," is not necessary. It may be alleged and proved as a fact, with such a return. On the other hand, a return of "no property" is not conclusive of the fact, but it may be shown that in fact the corporation had property liable to execution at law. Here the bill on its face shows this latter fact. The property of the corporation could have been sold as well at law as in equity.

A levy and sale of the property, subject to the first mortgage, would have passed the equity of redemption.

FARNHAM, CRUM & WEIL, for S. J. Jones and others, as claimants.—It is established by the facts proven and admitted by counsel that the judgments of Townsend and Brown, complainants, was by default, and no attempt or effort to enforce it, by this or any other proceeding, was made until after March following, claimants being all the while, and for six months and more prior to the filing of the bill, engaged in the active, actual operation of the road, and bettering and improving, or at least, maintaining the very property out of which complainants insist they must be first paid. *Farmers L. & T. Co. v. Green Bay &c. R. Co.,* 46 Amer. & Eng. R. R. Cases, 296; *Union Trust Co. v. Souther,* 107 U. S. 591; *Thomas v. Western Car Co.,* 149 U. S. 95; *Miltenberger v. Logansport R. R. Co.,* 106 U. S. 286. The electric street railway is governed by the same principles as other railroads.—*Cen. &c. R. R. Co. v. Twenty-third St. R. R. Co.,* 54 Howard Prac. 168; *Price v. State,* 74 Ga. 378.

TOMPKINS & TROY and EDWARD A. GRAHAM, for appellees.—1. The action of the court below in imposing terms as a condition to amending Pickering's answer by incorporating a demurrer in it, cannot be reviewed here. The case was at issue as to all the parties when the application was made, and the statute expressly confers upon the chancellor authority to say upon what terms an amendment shall be allowed, limiting him only in providing that they shall not exceed the payment of all the costs. Here he imposes the payment of half.—Code of 1896, §706.

It does not appear from the record that any paper setting out the ground of demurrer was presented to the court, and, therefore, this court cannot even say there was any ground of demurrer but what was frivolous, and, if so, the court below might have refused to allow it to be filed altogether.—*Ruse v. Bromberg,* 88 Ala. 619.

Not having shown what grounds he proposed to incorporate into his demurrer, this court will hardly make a critical examination into the record to see if

there is a defect in the bill which might have made it demurrable.

2. The bill certainly had equity as to all the defendants. Appellees could not have reached, under the law as it then stood, what the subscribers to the capital stock of the corporation owed on their subscriptions, by reason of their having been paid for by a conveyance of property at a fictitious valuation, by proceedings at law. The only remedy was in equity.—*Nicrosi v. Irvine*, 102 Ala. 648. And it is well settled that the difference between the real value of the property so conveyed and the par value of the stock may be reached by a bill in equity.—*Elyton Land Co. v. Bir. W. & E. Co.*, 92 Ala. 407; *Roman v. Dimmick*, 115 Ala. 233.

These cases settle the law conclusively adversely to the contention of counsel for Pickering, that the creditor cannot treat the property conveyed in payment as the property of the corporation, and at the same time seek to make those conveying it liable for their subscriptions. This is not a case where one is claiming under and against a conveyance. Here the creditor says the interest which the subscriber conveyed was of very little, if any, value, because the amount due upon the purchase money of the land which the corporation assumed was very nearly, if not quite, its full value, and that the subscriber should be held liable for the difference between the value of his interest in that property and the par value of the stock. The corporation cannot rid itself of the liability to pay that purchase money, and is entitled to the property, but the subscribers can be made to pay what he owes upon his subscription after crediting him with whatever was the reasonable value of what he conveyed—his interest.—*Parsons v. Joseph*, 92 Ala. 403; *Davis v. M. F. & C. Co.*, 101 Ala. 648.

3. The corporation had appeared and filed a demurrer with other defendants, and then it and the other defendants had appeared in open court and had withdrawn their demurrers, and it had given notice in open court that it did not intend to answer. Process had been served upon it more than thirty days before that time, and as it had only answered by filing a demurrer, when that was withdrawn complainants were entitled

to a decree *pro confesso* against it, even if it had not declared in open court that it did not intend to answer. Pickering came in after this decree was entered and undertook to file an answer for the corporation and himself jointly, and on motion this was stricken from the file as an answer for the corporation. This action of the court was clearly right, for two reasons. *First,* the corporation had no right to file an answer until the decree *pro confesso* was set aside; *second,* Pickering had no right to file an answer for the corporation. A corporation transacts business and defends suits by and through its board of directors, and no stockholder, even though he be vice-president, can appear for it unless he shows special authority, and especially is this the case with corporations organized under the general incorporation laws of this State.—Code of 1886, §1610; 4 Thompson on Corporations, §§4875-77; 1 Morawetz on Corporations, §§503, 510, 511.

4. The court properly ruled in holding that Jones and the others, who claimed for services performed, did not have a lien superior to that of the bondholders.—20 Amer. & Eng. Encyc. of Law, 434.

BRICKELL, C. J.—The original bill was filed by the appellees, judgment creditors of the Cloverdale Land & Development Company, a corporation, on behalf of themselves and all other creditors of the corporation; and the defendants are the corporation, the stockholders thereof, and the holders of the first mortgage bonds issued by the corporation. The allegations of the bill, so far as the assignments of error insisted upon in the argument of counsel for the appellants render it necessary to consider them, are, that the corporation was organized in 1892, purporting to have a capital stock of $350,000, divided into 3,500 shares of the par value of $100 each, which were subscribed for by certain of the defendants, payable in money, with the privilege of discharging the same by a conveyance to the corporation of seven miles of fully equipped electric street railway and 232 acres of land, together with all the rights, privileges and franchises which had been granted to the subscribers by the city of Montgomery. At the time of subscription, the subscribers did not own said land, and

·the electric street railway had not been built. All the property agreed to be conveyed to the corporation which was owned by any of the subscribers, was the franchise, granted by the city of Montgomery, to build a street railway over certain streets of said city, and an undivided one-fifth interest in said land, which was owned by one of the subscribers, and an option on the rest of the land given by the owners thereof, the value of all which property, it is alleged, did not exceed $10,000. It was not contemplated at the time of the issue of the stock to the subscribers, that they were to purchase and pay for the land and build the street railway and turn the same over to the corporation in payment of the stock; but, on the contrary, that the land was to be paid for, and the railway built by the corporation; and after the organization of the corporation, it did build the railway, under a contract with complainants, incurring an indebtedness therefor of $137,000, and assumed the payment of the entire purchase money of ·said land, $85,000, its full value, and gave its said notes for said indebtedness, secured by the first mortgage bonds of the corporation. The entire consideration received by the corporation for the $350,000 of stock was, therefore, as shown by the allegations of the bill, the franchise granted by the city of Montgomery, and the option on 232 acres of land, the value of which consideration was $10,000. It is further averred that the property of the corporation embraced in the deed of trust which it had executed to secure an issue of $350,-000 of bonds, constituted all its assets, except the claims against the stockholders for the unpaid subscriptions to the capital stock, and that the property is ·wholly insufficient in value to pay the amount of complainants' judgment for $138,500 and the amount due ·on the purchase money of said land; that the corporation was insolvent and had no assets which could be reached by proceedings at law; and that execution issued on complainants' judgment had been returned "no property." The prayer of the bill is, that a receiver of all the assets of the corporation be appointed with authority to take possession of and operate the street railway, and to collect all the assets of the company, including all the unpaid subscriptions to the capital

stock; that the property of the corporation be sold, and the amount realized from the sale and collections be distributed among the creditors according to their respective priorities, and for general relief. There are many other averments of the bill, but the questions presented for decision render a statement thereof unnecessary. A receiver was appointed with the power prayed for, and on June 2, 1893, a final decree was rendered in favor of complainants by which it was ordered that all the property of the Cloverdale L. & D. Co. should be sold subject to the lien of the bondholders and certain others named therein, and that reference be held to ascertain what, if anything, was due by the subscribers to the capital stock on account of unpaid subscriptions, and by other holders of stock who had acquired the same with knowledge that it had not been fully paid for. The register found and reported that the appellant Pickering acquired by original subscription 1617 shares of the capital stock for which he had paid nothing; and that he afterwards acquired by transfer from other parties 1618 shares, and that subsequently he had transferred 3227 shares of this stock to various persons, who had received it with knowledge of facts which put them on notice that it had not been paid for. The report further found that S. J. Jones and other creditors of the corporation, who had filed their claims in accordance with the former orders of the court, had *bona fide* claims against said company which were liens on all its property, but that such liens were subordinate and inferior to the lien of the bondholders. Exceptions to the report were filed by Pickering, Jones, and other claimants, but the same were overruled and the report was confirmed. No decree, however, was rendered against Pickering ascertaining, or requiring him to pay the amount due on his stock, and on May 9, 1894, the court made an order reciting that all litigated questions had been disposed of, and dropping the cause from the docket.

Errors are assigned only by Pickering and Dean, stockholders, and Jones and other claimants. The assignments are numerous, but under the well established rules of this court, we will consider only those which are discussed by counsel in their briefs, treating all others as having been abandoned.

The equity of the bill—that it presents a case essentially and peculiarly of equitable cognizance—cannot be doubted. When a corporation becomes insolvent, that a judgment creditor having exhausted legal remedies, may resort to a court of equity, to compel stockholders to pay their subscriptions for stock in satisfaction of corporate debts, is a well established doctrine. 3 Thompson, Corporations, §§3428-29; *Allen v. Montgomery R. R. Co.,* 11 Ala. 437; *Ogilvie v. Knox Ins. Co.,* 22 How. 380. In the case first cited, it was said by GOLDTHWAITE, J.: "The subscription is a debt which the corporation may call for, and if debts are contracted beyond the assets in hand, it would be most inequitable to neglect or refuse to make the call so far as to discharge the debt. It is on this obvious principle that a court of equity assumes jurisdiction and compels the corporation and stockholders to do that which justice requires—that is, to discharge the debt to the extent that the capital stock remains in the hands of the stockholder." The reasons supporting the exclusive jurisdiction of a court of equity, so far as now pertinent, are the prevention of a multiplicity of suits; the doing of that which courts of equity alone can do—the enforcement of equal distribution between the corporate creditors, and of contribution among shareholders, and thus, while satisfying creditors, equalizing the burdens of the contribution.—3 Thompson, Corporations, §3432; *Smith v. Huckabee,* 53 Ala. 191.

The present case is distinguishable from the cases referred to, in which there was a debt due the corporation, and which the corporation was capable of enforcing by legal remedies. Here, the stock may have been paid for, as the parties agreed, and such payment may be good as against the corporation.—*Nicrosi v. Irvine,* 102 Ala. 648. But that a court of equity will intervene on the insolvency of a corporation, at the instance of corporate creditors, and compel stockholders paying their subscriptions for stock by the transfer of property at a grossly fictitious value, to pay for the satisfaction of corporate debts, the difference between the par value of the stock and the reasonable value of the property, placing the stockholder in the same relation in which he would have stood if his subscription had been unpaid to

the corporation, was declared in *Elyton Land Co. v. Birmingham Warehouse & E. Company,* 92 Ala. 407; and recognized in *Nicrosi v. Irvine, supra.* And in the more recent case of *Roman v. Dimmick,* 115 Ala. 233, the doctrine was deliberately and emphatically reaffirmed.

It is alleged that the corporation is insolvent and has no assets which can be reached by any proceedings at law, and while it appears by other allegations that it possesses assets of large value, yet it also appears that these are subject to the lien of the deed of trust executed to secure an issue of $350,000 of bonds, which amount greatly exceeds the value of the assets. Although the equity of redemption of the corporation in much of the property is subject to levy and sale under execution, yet a levy and sale, it is plain, would be barren and unproductive, yielding nothing for the satisfaction of the judgment, and is in no proper sense an adequate remedy the complainants should be required to pursue. Nor did any remedy by garnishment exist, since the corporation itself, having accepted the property at its fictitious valuation in full payment of the stock, could not maintain action against the bondholders to recover in debt or *indebitatus assumpsit,* as unpaid balance on the stock, the difference between the par value of the stock and the real value of the property, and this fact, prior to the act of February 18, 1895, (Acts, 1894-95, p. 881), would prevent any recovery by process of garnishment.—*Nicrosi v. Irvine,* 102 Ala. 648.

Service of process was had on the Cloverdale L. & D. Company on February 20, 1893, and on March 21st said corporation filed a demurrer to the bill, but on March 25th, by leave of court, the demurrer was withdrawn, and counsel for this defendant announced in open court that it did not desire to further plead or demur to the bill. More than thirty days from the date of the service having expired, a decree *pro confesso* was thereupon rendered against the company. Subsequently, on April 21, 1893, Pickering, for himself and the Cloverdale L. & D. Company, filed an answer to the bill, and on May 23d, by leave of court, an amended answer, which was asked to be taken as a cross-bill, was filed, but no service was ever had on the cross-bill. The com-

plainants moved to strike the answer from the file, in so far as it purported to be the answer of the Cloverdale L. & D. Co., which motion was granted, as is recited in the final decree of June 2, 1893. On May 24th, Pickering moved to amend his answer by incorporating therein a demurrer, the grounds of which were set out, and the motion was granted on condition that 'he pay one-half of the costs that had accrued, amounting to $125, and Pickering having failed to pay the same, the motion was, on the same day, disallowed. On May 26th, an order of publication of testimony was made, and on the same day, but whether before or after the order of publication does not appear, the Cloverdale L. & D. Co., through Pickering, filed a petition praying that the decree *pro confesso* against the corporation be set aside, and it be allowed to defend; the petition averring that at a meeting of the stockholders of the corporation it had been resolved by a majority of the stock that the suit be defended. There does not appear in the record any judgment entries showing the rulings of the court on these various motions, except with respect to the motion to strike from the file the answer filed by Pickering, purporting to be the answer of the Cloverdale L. & D. Co., the action of the court appearing only from the docket memorandum of the chancellor, which is transcribed into the record under the head of "Orders of Court." We do not perceive any error in these rulings, but the record does not present the rulings in such manner as to authorize a review of them.—*Park v. Lide*, 90 Ala. 246; *Baker v. Swift*, 87 Ala. 530. A decree *pro confesso* having been rendered against the Cloverdale L. & D. Co., the answer of said defendant, filed by Pickering, without first having had the decree *pro confesso* set aside, was properly stricken from the file on motion, even if facts had been alleged and proven sufficiently to authorize a stockholder to defend for, or in the name of, the corporation. The undisputed evidence clearly supported the finding of the register that Pickering had not paid anything for the stock subscribed for by and issued to him, but as no decree was rendered against him for any unpaid balance due on his stock, we need not discuss the evidence in detail. The assignments or error in behalf of this appellant, which are dis-

cussed by counsel in their brief, are not well taken.

The assignments of error of S. J. Jones and other claimants present the single question, whether their claims are preferential debts constituting liens on the property of the Cloverdale L. & D. Co. superior to that of the bondholders. The insistence of counsel is, that these claims are for services rendered by claimants as mechanics, motormen and conductors in the operation of the electric cars on the street railway of said company, within six months next preceding the appointment of the receiver, and that these facts alone entitle them to priority over the bondholders under the decision in *Drennen v. Mercantile Trust & Deposit Co.,* 115 Ala. 592. We have carefully examined all the evidence in the record relating to these claims, but have failed to find any evidence tending to show the character of the services rendered, or the period during which they were rendered, except in the case of three or four of the claimants, whose testimony shows only that they were employed and served as mechanics, motormen or conductors during the six months next preceding the appointment of the receiver. It appears in the record of the proceedings on the reference that "by consent the pleadings in this cause and all affidavits made herein are now placed in evidence." If by this it was meant that the affidavits by which the various claims were verified were offered in evidence, these were admissible, and can be considered, only for the purpose of showing a compliance with the order of court, which required all claims to be verified by affidavit. They are mere *ex parte,* extra-judicial affidavits, not admissible for the purpose of proving the truth of the facts stated therein. If the character of this proceeding, which is not in any sense a suit by the bondholders claiming relief based upon their bonds, and which does not in any way affect the interest of the bondholders, presents a case for the application of the doctrine of preferential debts, the testimony of none of the claimants authorizes the application of the doctrine. It does not appear from any testimony offered in their behalf, or from any of the testimony referred to in support of their exceptions to the register's report, to which alone the chancellor is required to look in passing upon the exceptions, that

there has been any diversion of the gross earnings from the employes, directly or indirectly, to the bondholders; nor that the claims are for services rendered in such betterment and permanent improvement of the mortgaged property, enuring to the benefit of the bondholders in the enhancement of the value of their security, as is within the meaning of the rule governing the application of the doctrine; nor that the labor of claimants was necessary to continue the business of the corporation, or if so, that such continuance was to the advantage of the bondholders, or necessary in the conservation of their interests, nor that any income out of which, or because of the receipt of which, the wages for this labor should be paid, had been realized by the receiver from his administration and operation of the business of the corporation. The most that is shown is the bare fact that a few of the claimants rendered services as mechanics, motormen, or conductors within a certain period. The equity of an employe to have his claim preferred and declared superior to that of the bondholders does not arise out of these facts, but out of some of the facts or circumstances stated above, as to which there is a total want of evidence.—*Drennen v. Mercantile Trust & Deposit Co.*, 115 Ala. 592. The court below did not err in overruling the exception of these appellants to the register's report and in confirming the report. The decree *pro confesso* against appellant Dean was properly rendered, and the errors assigned in his behalf are not well taken.

Let the decree of the city court be affirmed.