# Louisville & Nashville R. R. Co. v. Holland.

## Damage for Death of Person on Track.

(Decided May 11, 1911.　Rehearing denied June 27, 1911.
55 South. 1001.)

1. *Railroads; Person on Track; Pleading; Construction.*—Where the action was against a railroad company for the death of a person on track a count alleging that the decedent, while asleep upon the track, was struck by a locomotive, and that defendant's engineer, though aware of the peril of decedent, negligently failed to use all proper means to prevent injuring him, was not objectionable as confusing the common law and statutory liability, as it avers no employment at the time of being injured, and hence, there can be no basis for an appeal to the Employers' Liability Act, although the terms used would be apt had the count been drawn under such statute.

2. *Same; Jury Question.*—Where the evidence will support a finding that the defendant's engineer saw decedent lying dangerously near the track while far enough away to have stopped the train, and that he ran over decedent, the jury might find that the engineer's act was wanton, as that must be largely a matter of inference from facts proven; hence, without invading the jury's province, the trial court could not have determined whether the conduct of the engineer was willful or wanton.

3. *Same; Care Required.*—The efforts of an engineer to avoid injury after discovering a person in peril that will exculpate the railroad must be the efforts that a prudent and skillful man in his station would have made, and hence, the fact that the engineer did everything in his power to prevent the injury was not sufficient.

4. *Trial; Province of Court and Jury.*—Where there is evidence tending to support the issues, the question becomes one for the jury.

5. *Appeal and Error; Harmless Error; Evidence.*—It being the rule that the erroneous exclusion of evidence is cured by the later admission of such evidence, the exclusion of an answer of a witness was not prejudicial where, upon interrogatories propounded by plaintiff under the statute, the witness testified to the excluded facts, and the depositions were introduced.

6. *Same; Objections Below; Requested Instructions.*—One not satisfied with an oral charge, because omitting certain elements, should request a special charge covering this feature before he is entitled to complain.

7. *Same; Waiver of Error.*—The submission on brief without insistence on a certain assignment is a waiver of such assignment under Supreme Court Rule 10.

8. *Same.*—Where the appellant has waived the error in a certain assignment by a submission on brief without an insistence on it, he

[Louisville & Nashville R. R. Co., v. Holland.]

cannot at a later date retract the waiver and in a supplementary brief insist upon the assignment.

9. *Same; Estoppel to Allege Error.*—Where one count proceeded on the theory that the deceased was a stranger to the railroad company, and the defendant requested and obtained a charge that deceased was a trespasser, and that the railroad owed him no duty, except in good faith to make an effort to avoid injuring him after discovering his peril, the defendant could not urge on appeal that there was a variance in that the proof showed that the relation of master and servant existed.

10. *Same; Harmless Error; Instructions.*—Where part of the oral charge might have misled the jury to the belief that the mortality tables were conclusive upon the question of life expectancy, a further instruction that they were not compelled to look to these tables, but might do so in determining the probable expectancy, cured the error.

11. *Evidence; Judicial Notice; General Panics.*—The courts take judicial notice of general panics or financial disturbances, such as the one of 1907.

12. *Same.*—The court will not take judicial notice that the prevalence of a panic reduced the earnings of the persons engaged during the year next preceding this, and hence, it was error for the plaintiff's counsel to make such a statement in argument, in the absence of proof of that fact.

13. *Trial; Argument of Counsel; Necessity of Objection.*—Where the objection was not specifically directed to the erroneous part of the argument, part of which was proper, it was not error to overrule a general objection.

14. *Jury; Competency; Relationship; Affinity.*—Affinity is the relation existing between a husband and the blood relations of the wife, or between the wife and the blood relations of the husband, but one spouse is not related to the affinities of the other spouse, and hence, a juror related by affinity to plaintiff's wife is not related to plaintiff.

15. *New Trial; Misconduct of Juror.*—The fact that a juror during an intermission in the trial went into a room adjoining the court room and greeted a near relation of the decedent, was not grounds for a new trial, where it did not appear that the cause on trial was the subject of the conversation, the action being for the wrongful death of the decedent.

16. *Charge of Court; Prominence to Particular Facts.*—Charges that the jury had the right to infer that the personal expenses of plaintiff's intestate were greater than $19.50 per month, and that in connection with the other evidence on the amount of the decedent's earnings, which were devoted to his personal expenses, the jury might look to the testimony of intestate's wife on the former trial, that it took about half his earnings to support himself, not only gave undue importance to isolated portions of the evidence, but were argumentative as well.

17. *Same; Meeting Argument.*—It is always proper to refuse charges requested for the purpose of meeting argument of opposing counsel.

18. *Same; Covered by Those Given.*—It is not error to refuse charges already coverd in substance by those given.

19. *Same; Ignoring Issues.*—In an action against a railroad for wrongful death based both on wanton negligence and the simple negligence of the engineer after discovering the peril of plaintiff's intestate, a charge which omits in hypothesis liability for the simple negligence was properly refused.

20. *Same; Weight of Evidence.*—In an action against a railroad for the wrongful death of a person on the track ·in which there was evidence that the use of sand was a supplementary aid to the quick stopping of the train, charges to the jury that the failure to use sand would not be negligence, unless its use would have prevented the injury, were invasive of t·e province of the jury, and hence, erroneous.

21. *Same; Assuming Facts.*—The evidence in this case· examined and it is held that the engineers' evidence as to the position of intestate's head did not conflict with plaintiff's evidence on that subject, and that a charge was not erroneous in assuming as a matter of fact that plaintiff's head was upon the rail.

22. *Evidence; Documentary; Mortality Tables.*—Mortality tables are not conclusive on·the issue of life expectancy in an action for wrongful death.

APPEAL from Limestone Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by W. T. Holland, as administrator, against the Louisville & Nashville Railroad Company, for damages for death of his intestate. Judgment for plaintiff, and defendant appeals. Affirmed.

Count D· is as follows: "The plaintiff, W. T. Holland, as administrator of the estate of Ranzy L. Holland, deceased, claims of the defendant, the Louisville & Nashville Railroad Company, a corporation, the sum of $25,000, for this: That, whereas, said defendant was, is now, and had been theretofore on, to wit, the 6th day of March, 1908, engaged in the business of operating a railroad in and through the town of Athens, county of Limestone, state of Alabama, for the transportation of persons and freight for hire; that on said day, to wit, the 6th day of March, 1908, plaintiff's intestate was in said town of Athens, Alabama; that plaintiff's said intestate fell asleep on or close to the railway track of defendant, and while thus asleep on or close to the railway track of defendant was struck by an engine or locomotive on the railway track of said

defendant, and was so injured therefrom that, as a proximate consequence thereof, he died. And plaintiff avers that one of defendant's engineers, T. J. Douglass, who had charge or control of said locomotive or engine operated then and there on said railway track of defendant, and to which engine or locomotive cars were attached, after discovering that plaintiff's intestate was thus in a perilous position, and that plaintiff's said intestate was totally unconscious of said peril, the said engineer who thus saw the perilous position of plaintiff's intestate and the unconsciousness of his peril by plaintiff's said intestate in time to avoid injuring him by the proper use of appliances at his command, listlessly, inadvertently, or negligently failed to resort to the proper use of all preventive means at his hands in the conservation of the safety of plaintiff's said intestate, all to the great damage of plaintiff as aforesaid."

The demurrers raise the proposition that the complaint shows that plaintiff's intestate was guilty of contributory negligence, and nothing more than simple negligence is charged therein, and because count D is inconsistent, in that a part thereof is based upon the common-law liability and a part under the employer's liability act, and because said count is indefinite and uncertain in this: That it fails to show whether it is grounded on the common-law liability or the statutory liability of an employer.

The following charges were refused the defendant: (5) "Unless the jury believe from the evidence that after the actual discovery by the engineer that the deceased would not leave the track, and the conduct of the engineer was such as to show a reckless disregard for the life of Ranzy L. Holland, they must find for the defendant." (7) "If the jury believe from the evidence that the engineer, as soon as he discovered that the deceased would not leave the track in time to escape the

injury, applied the brakes and emergency, and sounded the alarm signal, and if they further believe that the use of sand would not have prevented the injury, and that the engineer did all he could to stop the engine, they must find for the defendant." (8) "If the jury believe from the evidence that the engineer, after discovering that the deceased would not leave the track in time to escape the danger, immediately did all in his power to stop the engine, then they must find a verdict for the defendant." (G) "The failure to use sand by the engineer would not amount to negligence, creating liability in this case, unless you believe the use of the same would have prevented the injury." (P) "I charge you, gentlemen of the jury, that the use of the sand by the engineer could not, according to the evidence in this case, have operated to bring the train to a stop before it struck plaintiff's intestate." (Q) "I charge you, gentlemen of the jury, that under the uncontradicted evidence in this case the use of sand in connection with the other means adopted for bringing the train to a stop would not have operated to stop the train in time to avoid striking plaintiff's intestate." (8) "I charge you that in connection with all of the other evidence in this case bearing upon the question of the amount of the earnings of plaintiff's intestate, which were devoted to his personal expenses, you may look to the testimony of Mrs. Holland on the former trial that his earnings would not average more than $55 per month, and that it took about half of that amount for the support of plaintiff's intestate." (T) "I charge you in connection with all of the other evidence in this case bearing upon the question of the amount of the earnings of plaintiff's intestate, which were devoted to his personal expenses, you may look to the testimony of Mrs. Holland, the widow of plaintiff's intestate, on the former trial of this cause, and which former testimony she admitted upon this

trial having given at that time, that the earnings of her said husband would not average more than $55 per month, and that it took about half of that for his support." (X) "You have the right to infer from the evidence in this case that the personal expenses of plaintiff were greater than $19.50 per month."

SANDERS & THACH, for appellant. The court erred in overruling demurrer to count D.—4 Enc. P. & P. 619; 5 *Ib.* 303 and 334; *Dusenberry's Case,* 94 Ala. 413. The court erred in excluding that portion of Douglass's testimony objected to by plaintiff.—*L. & N. v. Holland,* 164 Ala. 73. The court erred in its oral charge to the jury as to the mortality tables and the life expectancy. —*Mary L. C. & R. Co. v. Sanders,* 97 Ala. 171; *Davis' Case,* 99 Ala. 593; *R. & D. R. R. Co. v. Hissong,* 97 Ala. 187. The court erred in refusing the written charges asked by the defendant to the effect that the verdict of the jury should be for the defendant if the engineer in charge of the engine used all of its appliances to avoid injuring plaintiff's intestate after discovering his peril. —*L. & N. R. R. Co. v. Brown,* 121 Ala. 227; *N. C. & St. L. v. Harris,* 37 South. 794; s. c. 44 South. 962; *L. & N. v. Holland, supra; Duncan v. S. L. & S. F.,* 44 South. 418; *Haley's Case,* 113 Ala. 648; *Glass' Case,* 94 Ala. 581. The courts judicially know or notice such things as are or should be generally known in their respective jurisdiction.—17 A. & E. Enc. of Law, 895, but the rule is limited to matters of a general and public nature. Hence, the court was in error in his ruling on the argument of counsel. The juror William E. Rowe was incompetent because of the relationship to plaintiff's wife. —*Kirby v. The State,* 89 Ala. 63; *Kelly v. Kelly,* 56 Am. Dec. 288; *State v. Wall,* 79 Am. St. Rep. 195. This disqualification was not known by defendant until after trial.—*Sowell v. Bank of Brewton,* 119 Ala. 92; 29 Cyc.

769.　The affirmative charge as to count D of the complaint should have been given.—*Choate v. A. G. S. R. R. Co.*, 54 South. 507.

W. R. WALKER, for appellee.　On the question of judicial notice and argument of counsel, the following cases are cited.—*T. & C. R. R. Co. v. Stanford*, 112 Ala. 80; *Andrews v. Frierson*, 144 Ala. 470; 92 C. C. A. 357; 105 U. S. 45; 4 Wig. secs. 2566, 2580.　The court properly denied the motion for a new trial, as the juror was not related by affinity to the wife of intestate, but merely to the wife's affinity.—*Kirby's Case*, 89 Ala. 63; 1 Coke on Littleton, 157; 24 Cyc. 274; Bishop on Marriage, sec. 744; 84 Ga. 145; 10 Lea. 1; 2 Snead 184. Counsel discuss other assignments of error, but insist that they were without merit for the reason that the questions involved were for the jury, and that they were fairly submitted to the jury and by them adversely decided to appellant.

McCLELLAN, J.—A report of the former appeal of this cause may be found in 164 Ala. 73, 51 South. 365, 137 Am. St. Rep. 25.

After remandment, the plaintiff withdrew all of the counts theretofore in the pleading, and amended the complaint by adding counts A, B, C, and D.　Count A was later withdrawn, and this action took out of the case the issues made by special pleas 2 to 7, inclusive, to that count only, leaving the general traverse of counts B, C, and D, as presenting the issues finally submitted to the jury.　These counts (B, C, and D) proceed on the theory of misconduct or omission after discovery of intestate's peril; the first ascribing willfulness or wantonness to the servant in charge of the locomotive, in inflicting the fatal injury, and the last two

imputing simple. negligence to that servant in respect of his conduct after discovery of intestate's peril.

The only error assigned and argued in brief, as upon rulings on the pleading, complains against the over-ruling of the demurrer to count D. The point of criticism of the count is that it confuses, in averments, common-law and statutory liability. The objection is not well founded. The count avers no relationship of employment, existing at the time of injury, between intestate and defendant, and without such an averment, at least as a *necessary* inference from facts alleged, the essential basis for an appeal to the provisions of the employer's liability statute is wanting. There being no averment of relationship in employment, the count must be taken as undertaking to charge a breach of the common-law duty toward one, of whose peril defendant's servant had become aware. That terms aptly descriptive of the character of the negligence imputed and of the *means* of the injury, had the count been drawn under the liability statute, were employed in this count cannot control the construction of the count. It is the gravamen of the whole count, and not to the abstract meaning of descriptive terms employed, nor to their association, upon occasion , with statutory or other rights and remedies, that controls the nature and character of the cause of action declared on. . The count is not uncertain or duplex in the particular upon which it is assailed.

The distance from intestate at which the engineer first discovered him in a position, dejected or recumbent, dangerously near or upon the track, was a controverted issue under the evidence, as was also the inquiry whether the engineer so omitted his duty, after becoming aware of intestate's peril, as to bring his conduct within the definitions approved by this court of wanton

or willful misconduct resulting in injury. Whether the consciousness essential to render conduct or omission willful or wanton, as the cause of injury, was present upon the occasion must have been, as generally and of necessity, a matter of inference from pertinent facts and circumstances proven. In this case it was open to be found, from the tendencies of the evidence, that the engineer saw the intestate on or dangerously near the track ahead, and so, in a recumbent posture, indicative of obliviousness to the impending danger from the on-coming train; that the point at which the engineer became so aware was beyond that from which, as related to intestate, the locomotive and train could have been stopped by the employment, promptly and in order, of the means provided and known to skillful men in his station; that these appliances were not so employed, since (evidently speaking) the train was not stopped within the distance some of the evidence tended to show it could have been brought to a stop; that to sand the track, through appliances afforded, is a supplementary aid to, if it does not itself facilitate, a quicker stop of a moving train; and that the sand was not used in this instance. Whether the engineer omitted or delayed doing his duty, and, if so, with a conscious disregard of the consequences of his omission or delay, in view of the peril in which he knew intestate was, could not have been pronounced by the court below without invading the jury's province. It is true he testified that all was done promptly and in order that could have been done to avert the injury; yet from other evidence it was reasonably open to be found that, though he knew of intestate's peril and saw his prostrate, apparently unconscious, posture in dangerous proximity to the track ahead, he delayed to avail, as he should not have done, of the appliances at hand to avoid the in-

jury, even, according to some of the evidence, to a point almost upon that at which intestate was; whereas, it appeared from some of the evidence that, had proper prudence been employed within a reasonable time after the engineer was aware of intestate's plight, preventive measures would have averted the injury.

In such state of reasonably possible finding of fact, it cannot be held that there was no reasonable warrant for the jury to conclude that the injury was willfully or wantonly inflicted.—*A. G. S. R. R. Co. v. Hamilton,* 135 Ala. 343, 33 South. 157. Whether these bases of extreme culpability of the engineer ought to have been found, from the whole evidence, by the jury were inquiries the court could not determine. There was evidence, as stated, leading to such a finding. Upon review of the trial on the motion for a new trial, the trial court resolved the issues of willfulness, wantonness, and simple negligence, vel non, in favor of the verdict. We are not convinced that that conclusion is so plainly erroneous as to justify its reversal.—*Cobb v. Malone,* 92 Ala. 630, 9 South. 738; *Hamilton's Case, supra.*

This question was propounded by counsel for defendant to the witness Cartwright: : "State whether or not the train stopped quickly after you heard the short, sharp distress signal?" The response was: "I think it stopped about as quick as it could have been stopped." The court sustained the motion of plaintiff's counsel to exclude the question and the answer thereto. The error, if such it was, was entirely cured when the witness, on subsequent examination, stated, "and, as stated before, after the distress signals were first sounded, the train appeared to have stopped about as quick as it could have slowed up."

On redirect examination by counsel for defendant, the witness Douglass was examined as follows: "Q.

State to the jury whether or not the road crossing at the third crossing (just north of which intestate was killed) south of the depot in Athens, the street crossing there, is not elevated somewhat above the track just north of it? A. Yes, sir; that ground is considerably lower. Q. Where? A. Just north of that crossing, where the street crossing comes up over it; that is what prevented me from seeing the man." On motion of plaintiff's counsel, no grounds being shown by the bill, the court excluded the expression, "that is what prevented me from seeing the man." If it be assumed (for the occasion) that this ruling was error, it was harmless, since the same matter, in substance and effect, was admitted in evidence at the instance of both plaintiff and defendant. In the answer of the witness Douglass, to interrogatories propounded by plaintiff to defendant under the statute, this appears: "At a point a few feet south of where Holland was lying when he was struck, there is a street crossing somewhat elevated above the point where Holland was lying at the time he was truck, and this elevation was the only obstruction between Holland and the engineer." In the further examination of Douglass he said: "* * * That the crossing rising above it was what prevented him from seeing him further off; * * * that the elevation of the dirt road as traveled at the third crossing above the ground just north of that crossing obscured the object which was lying there from his vision until he got to within the distance which he had testified to," etc.

In the course of the oral charge to the jury, at different times, the court used this language, to which exceptions were separately reserved: "(a) You take into consideration the distance above the rail that his head was;" and "(b) You take into consideration all the

facts and circumstances, * * *·· the height of Hol-
land's head above the rail." The .back of the skull of
intestate was crushed. This wound appears to have
been the cause of his death. The engineer testified that
the heel of the pilot struck intestate's person; "that
from his (engineer's) position·he could not .see what
portion of his head or face was towards him, but that
the back of his head was resting on his arm, which was
between the ties: * * * that the object did not
move until the heel of the pilot struck it."

Three witnesses for the plaintiff testified that intes-
tate's head, just before he was struck, was above the
rail. Unless the testimony of the witness Douglass,
which we have quoted in part, instituted a conflict with
the plaintiff's witnesses referred to, the relative loca-
tion of the intestate's head, in respect to elevation above
the rail, was not a matter of dispute. As counsel for
appellant insist, the relative posture of intestate, as
the train approached, was a vital factor in the determi-
nation of the engineer's culpability. The elevation (if
so) of intestate's head above the lateral line of the rail,
on the east side of the track,· had the immediate ten-
dency to show that the engineer, steadily looking ahead
as he testified he was doing, discovered intestate's peril
at a greater distance south of intestate than he (engi-
neer) admitted. On his examination in chief, Douglass
testified: "That he did not see anything unusual on
the track on ringing the bell. but when he got up 125 or
150 feet he saw a man lying out east and north, with
his head resting on his arm, and was at the end of the
tie or on the rail, and that it was between the ties."

After cautious review of Douglass's testimony, we do
not find that he anywhere undertook to fix the location
of intestate's head as respected the level of the rail, un-
less we except where, as we have quoted above, he used

the phrase, *"or on the rail."* Whether this phrase had reference to the head, the arm, or the body (proper) of the intestate is very doubtful. The other feature of his quoted testimony, where he said "that the back of his head was resting on his arm, *which* was between the ties," does not tend to show the relative (to the rail) elevation of intestate's head; *"which"* had reference, it appears to *"arm."* There having been, as we view it, no conflict as respected the relative (to the rail) elevation of the intestate's head, the court did not err to defendant's prejudice in assuming, as a matter of fact, that which was, without dispute, proven on the trial.

Two other parts of the oral charge are complained of in assignments 7 and 8. Mortality tables are not conclusive upon the issue of life expectancy. If the original statement of the court in respect to such tables was calculated to impress the jury that they were bound by the table, the idea was fully eradicated by the explanatory statement, made by the court to the jury, wherein it was said: "I do not mean that you are compelled to look to these (mortality tables) but you may look to these in determining the probable expectancy of Holland." The criticism of the other excerpt from the oral charge is that the court prejudicially emphasized the expectancy of intestate, at the time of his death, as being 36 years. Construing the whole of this feature (the ascertainment of the amount of the compensatory damages, if plaintiff was entitled to recover) of the oral charge, it appears that the court was attempting to more fully inform the jury, in the premises, by means of illustration. The reiteration of the expectancy shown by the mortality table introduced in evidence was doubtless unnecessary, even to the illustration. But the explanation by the court before quoted removed any impression that the expectancy shown by the mortality table was binding on the jury. If the

defendant was not content with the oral charge, because omissive of the elements bearing on life expectancy, stated in *Mary Lee Coal & Railroad Company v. Chambliss*, 97 Ala. 171, 11 South. 897, special charges on that subject should have been requested.

Charge 1, refused to defendant, was covered in substance by those given for defendant—charges 4, 6, and 16. Charge 3, refused to defendant, was a substantial duplicate of that given for defendant—charge 4, among others. Charge 5, refused to defendant, was incomplete; besides it tended to mislead and confuse the jury by omitting, in hypothesis, the right to a recovery by plaintiff as upon the theory of simple negligence, after discovery of intestate's peril. Charge 7, refused to defendant, was faulty, unless interpreted as being in substance and effect the same as given, for defendant, charges 4, 6, and 16.

However, the refusal of charges 7 and 8 was justified by reason of the fact that in each the hypothesis in part was that the engineer did all in *his* power to stop the engine; whereas, in any event it was the standard of duty, if negligence was to be avoided, that the engineer's preventive effort be such as was known to prudent and skillful men, in his station, in use of the means at hand to avert the impending injury.—*L. & N. R. R. Co. v. Young*, 153 Ala. 232, 236-237, 45 South. 238, 16 L. R. A. (N. S.) 301.

Charge G, refused to defendant, invaded the province of the jury and ignored the tendency of the evidence to the effect that the use of sand was a supplementary aid to, if it did not itself facilitate, the quicker stopping of a moving train. If the omission to use sand contributed to the failure to stop the train before the injury was inflicted, and if the use of sand was one of the means known to skillful men in the station Douglass occupied to stop trains, under the conditions shown by the evi-

[Louisville & Nashville R. R. Co., v. Holland.]

dence in this instance, and if the appliances to enable the use of sand were afforded on this locomotive, and·if there was time—opportunity—to avail of its use, then it would have been error to give charge G, whereby the failure indicated was predicated for culpability upon the condition that its use would have prevented the injury. This charge, as well as those lettered P and Q, to similar effect, was well refused.

This charge was refused to defendant: "(K) I charge you that you cannot take judicial knowledge of the fact that R. L. Holland earned less the last year of his life than he had theretofore." The recitals of the bill, in respect of this charge, are these: "The last preceding charge was requested to meet the argument of counsel for plaintiff before the jury. Counsel for plaintiff in his argument to the jury stated that the court and the jury would take judicial knowledge of the fact that for many months prior to the death of plaintiff's intestate a panic had been on, and that they would take judicial knowledge of the fact that plaintiff's intestate had earned less on account of said panic than he had prior thereto. Counsel for defendant objected to this statement of counsel for plaintiff, and moved the court to exclude the statement from the jury. The court declined to sustain the objection to the argument of counsel for plaintiff, and overruled the motion of the defendant to exclude the argument from the consideration of the jury. The defendant duly and legally excepted to this action of the court." ·

Charge K was correctly refused. As appears from the bill, it "was requested to meet the argument of counsel for plaintiff before the jury." It is the settled rule in this court that it is not error to refuse such charges.—*B. R. L. & P. Co. v. Morris,* 163 Ala. 190, 209, 50 South. 198; *Hill v. State,* 161 Ala. 67, 69, 50 South. 41; *Birmingham Water Co. v. Copeland,* 161 Ala. 310,

312, 50 South. 57; *Thomas' Case,* 150 Ala. 31, 44, 43 South. 371; *Moss v. Mosely,* 148 Ala. 168, 187, 41 South. 1012; *Mitchell's Case,* 129 Ala. 25, 30 South. 348; *White v. State,* 133 Ala. 123, 127, 32 South. 139; *Ridgell v. State,* 1 Ala. App. 94, 55 South. 327; *B. R. L. & P. Co. v. Chastain,* 158 Ala. 421, 428, 429, 48 South. 85, among others. The cases of *Etheridge v. State,* 124 Ala. 106, 27 South. 320, *Haynes v. McRea,* 101 Ala. 318, 13 South. 270, and perhaps others of earlier pronouncement, seem to invite, if not affirm, a conclusion opposed to the later and now established rule before stated, and must therefore be taken as disapproved. Nor do we think the ruling in respect of the objection to and exclusion of the argument of counsel in the particular indicated error, and so for the reasons to be stated.

The statement of counsel that court and jury would take judicial knowledge that a condition of panic prevailed "for many months prior to the death of plaintiff's intestate" on March 6, 1908, was not objectionable. Courts will take judicial notice of what is generally known within the limits of their jurisdiction; of facts, without evidence thereof, presumably known to everybody; of facts which everybody does know.—*Gordon et al. v. Tweedy,* 74 Ala. 232, 237, 49 Am. Rep. 813; *Wall v. State,* 78 Ala. 417, 418; and other cases cited in Mayfield's Digest, vol. 3, p. 437.

Consistent with the general rule stated, this court, in *Clifton Iron Co. v. Dye,* 87 Ala. 468, 471, 6 South. 192, decided in 1888, took judicial knowledge "of the fact that in the development of the mineral interests of this state, recently made, very large sums of money have been invested." This view was approvingly quoted in *Drake v. Lady Ensley Co.,* 102 Ala. 501, 506, 14 South. 749, 24 L. R. A. 64, 48 Am. St. Rep. 77. Such recognition of the fact as the quoted case made necesarily com-

prehended an assumed knowledge, unaided by evidence, of industrial activity in the mineral region of this state. The result cannot be different when reference is had, as here, to a condition of "panic" in our country. The press teemed with news of its prevalence during the winter of 1907-08, as well as with evidences of its effect upon enterprises and industrial activity. Many large and small banks of deposit throughout the country issued "clearing house certificates," and these were used, accepted, as tokens of the value their faces purported to assure. Withal, the fact of financial and industrial depression throughout the country, during the period indicated, was universally known. So we think the part of the argument just considered was not without justification.—*Ashley v. Martin*, 50 Ala. 537.

The latter feature of the argument, viz., that judicial knowledge would be taken that the effect of the "panic" was to reduce the earnings of intestate, below what they had been prior to the panic, was the statement of a material fact without any support in the evidence and without the pale of judicial knowledge. Had this phase of the argument been objected to and the objection overruled, error would have resulted. But the objection and motion, here pressed for appellant, included, without separation, the phase of the argument which, as we have ruled, was unobjectionable. Having embraced in the one objection and motion matter unobjectionable with matter that would have been objectionable, the trial court will not be put in error for its action in overruling such objection and motion.

Special charges S, T, and X, were well refused. S and T were argumentative, as well as possessing the vice of singling out and giving undue importance to a feature or features of the evidence. Charge X was subject to the latter criticism of charges S and T.

William Rowe served as a juror on the trial. His wife was Edna Lewis. She was the daughter of Eula

Lewis. Eula Lewis was a daughter of George Hughey. George Hughey was a son of Isaac Hughey (common ancestor). And plaintiff's (W. T. Holland's) wife was a daughter of Isaac Hughey. Juror Rowe, appellant insists, was related within a prohibitive degre of affinity to plaintiff through plaintiff's wife. It is argued that Rowe was related by affinity in the fourth degree to plaintiff, because plaintiff's wife was so related by affinity to Rowe.

"Affinity" is the relation, the product of marriage, between the husband and the consanguinei of the wife, or between the wife and the consanguinei of the husband. —*Kirby's Case,* 89 Ala. 63, 8 South. 110; *Danzey's Case,* 126 Ala. 15, 28 South. 697; *Lowman v. State,* 161 Ala. 47, 50 South. 43. The husband is not related to the affines of the wife.—2 Steph. Com. 285; *Lowman v. State, supra.* The juror's wife was related by affinity to the plaintiff, since she (Edna Rowe) was the great-niece of plaintiff's wife; and the juror was related by affinity to plaintiff's wife, by the same strain as connected plaintiff with the juror's wife. But since the affines of the wife are not related to the husband, and vice versa, the plaintiff and the juror were not related by affinity.

One of the grounds of motion for new trial was rested on the alleged bias or prejudice of the juror Rowe in favor of the beneficiaries of the recovery in this action. The basis for this insistence seems to be that Rowe, during an intermission in the trial, went into a room adjoining the court-room, wherein the father, father-in-law, widow, and children, of the intestate were, and greeted and talked to them. The bill recites: "It was admitted by counsel for the parties that defendant's counsel saw juror W. E. Rowe go into the room and converse with said parties mentioned in the evidence, * * * and such occurrence was told to the judge the follow-

[Louisville & Nashville R. R. Co., v. Holland.]

ing morning on the bench; such occurrence not being known to counsel for plaintiff." It does not appear that the cause on trial was the subject, directly or indirectly, of the conversation stated. While the described action of this juror did not evince the very nicest sensibility for the proprieties, that all possible suspicion of his impartiality might be avoided, it was not such action as amounted to misconduct or that tended, without more (not here present), to prove bias or prejudice in favor of plaintiff or of the beneficiaries of the recovery under the statute.—*Montgomery Traction Co. v. Knabe,* 158 Ala. 458, 48 South. 501.

Every assignment of error insisted on in brief on submission has been considered and treated in the opinion. We find no error therein, so the judgment must be arffimed.

Affirmed.

DOWDELL, C. J., and SIMPSON and SOMERVILLE, JJ., concur.

## On Rehearing.

This appeal was submitted May 18, 1910. Assignment of error No. 20 complained of the action of the court in refusing to defendant (appellant) charge D. This was the affirmative charge for defendant as to count D of the complaint. In the brief filed for appellant upon the original submission, there was, as is conceded for appellant, no insistence whatever upon assignment No. 20. In April, 1911, appellant's counsel filed what is denominated as "Additional Brief for Appellant." It consisted of the statement that "the general charge as to count D of the complaint should have been given," and closed with the citation, in support of the statement, of *Choate v. A. G. S. R. R. Co.,* 170 Ala. 590, 54 South. 507-509. A copy thereof was served

upon counsel for appellee, according to the certificate, on April 5, 1911. The opinion was delivered on May 11, 1911. In its closing lines, this statement appears: "Every assignment of error insisted on in brief *on submission* (italics supplied) has been considered and treated in the opinion." Necessarily the restriction of the consideration of the assignments of error to those only insisted upon in brief *on submission* excluded the belated argument expressed in the "Additional Brief for Appellant." The question whether the belated insistence could be noticed was thoroughly considered by the court in consultation, and determined against appellant, as the quoted statement indicates. On rehearing, counsel for appellant again press the proposition and insist that the *additional brief* was within rule 13 of Supreme Court practice, and that its contention should be considered and given effect.

It is too well settled to now admit of doubt that the failure of an applicant to insist, in this court, upon errors assigned on the record is a *waiver* and abandonment thereof.—*M. & C. R. R. Co. v. Martin,* 131 Ala. 269, 280, 30 South. 827; *Beyer v. Fields,* 134 Ala. 236, 238, 32 South. 742; *Pickering v. Townsend,* 118 Ala. 351, 357, 23 South. 703; *Western Railway Co. v. Arnett,* 137 Ala. 414, 425, 34 South. 997; *North Ala. Railway Co. v. Counts,* 166 Ala. 550, 51 South. 938; among others. See, also, 4 Enc. L. & P. pp. 605, 606. The *submission* on brief, without insistence upon assignment 20, was, hence, a waiver and abandonment of that assignment.—Rule 10, Supreme Court Practice (Civil Code 1907, p. 1508). Pending the period between the *submission* and the presentation of the *additional brief,* many months afterwards, obviously the waiver was effective. So, under our practice, the real question is, Could the appellant retract, long after *submission,* the waiver thus deliberately made by the filing of an *addi-*

*tional brief,* as was here done? Rule 13 of Supreme Court practice has no reference to the retraction of the waiver wrought by the failure to insist upon an assignment of error. The *additional brief* thereby contemplated must, as far as appellant is concerned, be in support of errors already urged upon submission.

The time for appellant's election of the errors assigned upon which he will rely and insist (rule 10, S. C. Pr.) is when the appeal is submitted. If he does not do so, he has abandoned—waived—the error assigned. If then he must have elected, with waiver as to those errors not then urged, there can be, in the nature of things, no other stage of the proceeding in this court where he may retract the legal effect of his former inaction with respect to errors assigned. His submission of the appeal upon a brief wholly silent as to one or more of the errors assigned commits the appeal to the court just as if the waived or abandoned errors had not been assigned. The assignment of errors being in the nature of a complaint in pleading by appellant, his abandonment or waiver of one or more assignments is not different, in principle, from like action by a plaintiff at nisi prius, with reference to counts in his declaration after the submission of the case to the trier thereof. As a matter of orderly procedure alone in this court, any other practice in this regard would be confusing and retarding. If an appellant might, months after submission and before the decision was delivered, press errors not insisted on at the submission, it would be required that appellee have a reasonable opportunity in which to reply to the insistence upon theretofore abandoned errors; and hence the consideration of the appeal by the court suspended during this period. Indeed it might, and, if the practice were allowed, doubtless would often, occur that the questions urged *on the submission* had been decided and the opinion of the

court prepared to be delivered when the new insistence was presented by *additional brief,* whereupon the court would be required, after reasonable opportunity afforded appellee to reply to appellant's additional brief, to restore the appeal to a status of consideration; whereas, it had been fully decided upon the questions urged at the submission. It is evident that the practice this appellant's contention would lead to would permit the assignment of numerous errors and the submission upon an insistence as to one only of them, and a periodic presentation of arguments in support of theretofore unurged assignments. An artful appellant, who desired delay, might thus be invited to effect his purpose. The following decisions, noted on brief for appellee, of other jurisdictions, with others cited in them, support our conclusion in this regard:—*Gates v. B. & O. Ry. Co.,* 154 Ind. 338, 56 N. E. 722; *Sligh v. Shelton R. Co.,* 20 Wash. 16, 54 Pac. 764; *Foster v. East Jordan Lumber Co.,* 141 Mich. 316, 104 N. W. 617; *State v. Omaha Nat. Bank,* 59 Neb. 483, 81 N. W. 322.

But had appellant included in his brief on submission an insistence on assignment 20, as upon the authority of *Choate v. A. G. S. R. R. Co., supra,* it would not have availed. At the request of the defendant (appellant) the court gave charge 2, as follows: "I charge you, gentlemen of the jury, that Ranzy L. Holland was a trespasser, and the defendant owed him no duty, except to, in good faith, make an effort to avoid injuring him after actually discovering his peril."

The theory upon which appellant would apply the ruling in *Choate v. A. G. S. R. R. Co., supra,* was that Holland was alleged in count D to have been, when stricken, a stranger (and he was, if a trespasser) in respect of relation in employment to the appellant; whereas, the evidence showed that the relation of master and servant existed, and negligence by Holland, in

the performance of a duty while in that relation.—*Helton v. Ala. Mid. R. 'R. Co.*, 97 Ala. 284, 12 South. 276. As is evident, the quoted charge given at appellant's insistence and request advised the jury in immediate opposition to the theory of variance taken and applied in *Choate v. A. G. S. R. R. Co., supra.* Having induced the court to so instruct the jury, the appellant cannot, in this court, complain of the refusal of an instruction that, to have been properly. given, must have assumed a status immediately opposed to that pronounced in the instruction (2) that was given at appellant's request. —*Clarke v. Dunn*, 161 Ala. 633, 639, 50 South. 93, and authorities therein cited; *Shelton's Case*, 73 Ala. 5; *Leonard's Case*, 66 Ala. 461.

The application for rehearing is denied.

DOWDELL, C. J., and ANDERSON, MAYFIELD, SAYRE, and SOMERVILLE, JJ., concur.

### Damage for Death of Person on Track.

